Present: All the Justices

JOHN POWHATAN KIRBY, JR.

OPINION BY
v.  Record No. 020685        CHIEF JUSTICE HARRY L. CARRICO
November 1, 2002
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

The question presented by this appeal involves the application of Code § 19.2-271.2, which deals with the "[t]estimony of husband and wife in criminal cases."  The appeal results from the trial of a two-count indictment returned against the defendant, John Powhatan Kirby, Jr., in the Circuit Court of Campbell County.

In Count 1 of the indictment, the defendant was charged with unlawfully and feloniously discharging "a firearm within a building when occupied by one or more persons whereby their lives or life were put in peril," in violation of Code § 18.2-279.[1]  In Count 2, the defendant was charged with unlawfully and feloniously possessing "a firearm after having been convicted of a felony," in violation of Code § 18.2-308.2.[2]

---

[1] In pertinent part, Code § 18.2-279 provides that if any person unlawfully discharges a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, the person so offending shall be guilty of a Class 6 felony.

[2] In pertinent part, Code § 18.2-308.2 provides that it shall be unlawful for any person who has been convicted of a felony to knowingly and intentionally possess any firearm.

Under Count 1, the trial court, sitting without a jury, convicted the defendant of the reduced charge of reckless handling of a firearm in violation of Code § 18.2-56.1[3] and sentenced him to serve twelve months in jail, suspended.  Under Count 2, the court convicted the defendant of possessing a firearm after having been convicted of a felony and sentenced him to serve five years in the penitentiary.

The defendant appealed his convictions to the Court of Appeals of Virginia, and that court affirmed.  We awarded the defendant this appeal.

The evidence shows that the defendant and his wife, Lisa Kirby, lived in a small home in Altavista, with one bedroom, a living room, and a kitchen on the first floor.  On the morning of September 1, 2000, the defendant and Lisa were alone in their home.  He was in an intoxicated condition, and he became angry and "kept wanting [Lisa] to explain this piece of paper that he found."  He told Lisa "[o]ver and over" that this was "the day [she] was going to die" and that she should "get [her] soul right with the Lord."

Lisa owned a .22 caliber pistol that was ordinarily kept either in the drawer or on the top of a nightstand in the bedroom.  At one point during the morning of September 1, the

_____

[3] In pertinent part, Code § 18.2-56.1 provides that it shall be unlawful for any person to handle recklessly any firearm so

defendant was on a bed in the bedroom and Lisa was seated on a sofa in the living room. From her position on the sofa, Lisa could see the foot of the bed through an archway in the wall separating the living room from the bedroom. She heard two shots coming from the bedroom. "[A]s it turned out," the bullets "didn't come close" to Lisa, but she "didn't know that then." She grabbed her keys, went out the side door of the house, got into her truck, and fled.

Lisa reported the incident to the Altavista police department. The investigating officer, a state-certified firearm instructor, found a .22 caliber pistol in the top drawer of a chest of drawers in the bedroom. He also found two bullet holes in the bedroom floor near the nightstand, along with two .22 caliber slugs that were embedded in the floor. The holes were located one foot from the bed and fifteen feet, nine inches from where Lisa was sitting in the living room when the shots were fired. Asked to categorize the firing of the gun "safety-wise" under the circumstances existing in the Kirby home at the time in question, the officer stated that it was "[n]ot safe at all," that a lightweight projectile like a .22 caliber projectile traveling at a high velocity and striking a "medium with any density whatsoever would be more likely to have a deflection."

as to endanger the life, limb, or property of any person.

3

Lisa testified that, after the incident, the defendant apologized for having scared her.  According to Lisa, the defendant stated that "he didn't mean to do it, he didn't know what he was doing."

Code § 19.2-271.2 provides in pertinent part as follows:

> In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses . . ., may be compelled to testify in behalf of each other, but neither shall be compelled to be called as a witness against the other, except (i) in the case of a prosecution for an offense committed by one against the other . . . .
>
> In the prosecution for a criminal offense as set forth in (i) . . . above, each shall be a competent witness except as to privileged communications.

The sole assignment of error in this case states as follows:

> The Court of Appeals erred when it held the trial court properly admitted without limitation the testimony of Lisa Kirby, spouse of John Kirby, when the witness was compelled to testify over defendant's objection pursuant to §19.2-271.2 of the Code of Virginia 1950, as amended and where the indictment for neither offense mentioned Lisa Kirby specifically as a victim.

Under this assignment of error, the defendant presents three arguments, (1) the evidence was insufficient to show that the prosecution in this case was for offenses committed by the defendant against Lisa Kirby and, therefore, she could not be compelled to testify against him, (2) the indictment failed to name Lisa as a victim of either offense, and (3) the statements of the defendant that were admitted at trial, especially the

4

statements regarding his apology to Lisa, were "privileged communications" within the meaning of the final clause of Code § 19.2-271.2 and thus inadmissible.

In our opinion, the assignment of error properly encompasses the defendant's argument regarding the sufficiency of the evidence to show that the prosecution in this case was for offenses committed by the defendant against Lisa. We are also of opinion that this argument was properly preserved below.

However, with respect to the argument concerning the failure of the indictment to name Lisa as a victim, although the assignment of error properly encompasses the argument, the first time the argument is ever mentioned in the case is in the petition for appeal the defendant filed in the Court of Appeals. As the Attorney General correctly states on brief: "Kirby never objected to the wording of the indictments at trial. Rather, his objection to [Lisa's] testimony went to whether the evidence would show that the offenses were committed against her." Hence, the argument concerning the wording of the indictment was not properly preserved for appeal, and we will not consider it further. Rule 5:25.

Finally, with respect to the argument regarding "privileged communications," the assignment of error does not properly encompass the argument. "The purpose of assignments of error is to point out the errors with reasonable certainty in order to

direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment . . . ." Yeatts v. Murray, 249 Va. 285, 290, 455 S.E.2d 18, 21 (1995) (internal quotation marks omitted); "counsel, in . . . assignments of error in this court, should . . . lay his finger on the error." First National Bank of Richmond v. William R. Trigg Co., 106 Va. 327, 342, 56 S.E. 158, 163 (1907) (internal quotation marks omitted). Here, counsel did not "lay his finger on the error"; under no reasonable reading can the assignment of error possibly direct this Court or opposing counsel to an understanding that the defendant intends to ask reversal on an alleged violation of the statute prohibiting the disclosure of privileged communications between husband and wife. Hence, we will not notice the defendant's argument on the subject. Rule 5:17(c).

Concerning the one question properly encompassed in the assignment of error and properly preserved for appeal, i.e., whether the evidence was sufficient to show that the prosecution in this case was for offenses committed by the defendant against Lisa, it is not disputed that the defendant discharged a firearm within the parties' home and that the home was occupied by one or more persons. The focus of the inquiry turns, therefore, to the portion of Code § 18.2-279 requiring a showing that the life

6

or lives of such person or persons "may be put in peril" by the discharge of a firearm.

The defendant says there was no showing that the discharge of the firearm may have put Lisa's life in peril and, therefore, he did not commit an offense against her, because "nothing actually happened to [her]," she "was not struck by a bullet," and there was "no evidence presented that the bullets were specifically fired in her direction." However, the evidence showed that on the occasion in question the defendant was intoxicated, he was angry, and he repeatedly told Lisa "today was the day [she] was going to die." He followed up this threatening language by firing two shots from the bedroom within a relatively short distance from where Lisa was seated in plain view on a sofa in the living room.

It was not necessary for the Commonwealth to show that something "actually happened to Lisa," or that she was "struck by a bullet," or that "the bullets were specifically fired in her direction." All the Commonwealth was required to show was that the discharge of the firearm may have put Lisa's life in peril. This requirement was fully met with the evidence just recited, coupled with the testimony of the investigating police officer that it was "[n]ot safe at all" to discharge a firearm "within a house [with] somebody seated approximately fifteen feet away." Clearly, therefore, the discharge of a firearm

7

under the circumstances of this case is an offense by one spouse against the other.

The defendant argues, however, that in no event can his conviction under Code § 18.2-308.2 for possession of a firearm by a felon be considered an offense by one spouse against the other. The defendant says the Code section is essentially a regulatory statute designed to prohibit a particular group from having ready access to firearms, and the General Assembly "clearly intended the protection [against spousal testimony] to encompass a spouse's knowledge of regulatory type crimes such as possession of a firearm by a convicted felon." In short, according to the defendant, possession of a firearm by a convicted felon is a victimless crime.

We disagree with the defendant. We are of opinion that where one spouse is charged with an offense against the other and with an offense involving the violation of a statute regulating some conduct involved in the first offense (e.g., one spouse possessing a firearm as a convicted felon and discharging the same firearm to the peril of the other spouse), the endangered spouse can testify against the offending spouse in the prosecution of both charges. See Brown v. Commonwealth, 223 Va. 601, 608, 292 S.E.2d 319, 323 (1982) (where one spouse is indicted for offense against the other and for an offense against a third party and both offenses arose from a common

8

criminal enterprise, the one spouse can testify against the other in prosecution of both charges).

The parties debate whether Lisa testified against the defendant voluntarily or under compulsion.  If she was compelled to testify, a proposition we will assume for purposes of discussion, then the compulsion was proper because the prosecution was for offenses committed by one spouse against the other.  Accordingly, the Court of Appeals did not err when it held the trial court properly admitted Lisa's testimony, and we will affirm the judgment of the Court of Appeals.

Affirmed.[4]

---

[4] The defendant cites <u>Creech v. Commonwealth</u>, 242 Va. 385, 387, 410 S.E.2d 650, 652 (1991), for the proposition that the offense-against-spouse exception to Code § 19.2-271.2 does not apply to his case.  However, in <u>Creech</u>, the defendant's wife was improperly permitted to testify against her husband where the indictment charged him with arson in the burning of his own house.  Hence, the case is inapposite.