COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Humphreys and Kelsey
Argued at Richmond, Virginia


NELSON RAY LAMB, JR.

                                        MEMORANDUM OPINION* BY
v.     Record No. 1262-02-2              JUDGE D. ARTHUR KELSEY
                                              APRIL 29, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     William R. Shelton, Judge

            C. David Whaley (Morchower, Luxton & Whaley,
            on brief), for appellant.

            Amy L. Marshall, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General, on
            brief), for appellee.


     Nelson Ray Lamb, Jr., challenges the sufficiency of the

evidence for his conviction under Code § 18.2-154 for throwing a

missile at an occupied vehicle.  He also argues that the trial

court erroneously sentenced him for intentional vandalism (a

Class 1 misdemeanor under Code § 18.2-137(B)) on a charge for

unlawful vandalism (a Class 3 misdemeanor under Code

§ 18.2-137(A)).  Finding these arguments without merit, we

affirm the trial court.



———————————————————————

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

On appeal, we review the evidence "in the light most favorable to the Commonwealth." Morrisette v. Commonwealth, 264 Va. 386, 389, 569 S.E.2d 47, 50 (2002). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citation omitted); see also Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

Nelson Ray Lamb, Jr., and Lisa Michelle Hood lived together in March 2001. Hood had two children from a prior relationship, ages 11 and 9, and one child with Lamb, age 3. The couple cohabited in a home that they leased from Hood's mother.

On March 23, 2001, Hood decided to go to the store and called Lamb on his cell phone to let him know her intentions. Lamb, who happened to be in the front yard of their residence at the time, told Hood to take all three children with her. By his demeanor, Lamb appeared to Hood to be intoxicated. Hood took the three children outside and put them in a van. She placed her three-year-old child in the back seat of the van. As she did so, she saw Lamb and another man, Mike Creighton, "sitting out in the yard, drinking by [Creighton's] car." Hood got in

-

the van and "got ready to back up" when she noticed Lamb "standing behind the van." She placed the van in park and was about to exit the van when her "11-year-old son said, Watch out." Still in the van with the children, Hood turned around and saw Lamb "throwing rocks at the back window." The rocks "busted the back window" of the van. Hood jumped out and ran to the back of the van saying, "Ray-Ray, stop it, the baby is in the truck." Hood then removed the children from the van, went inside the house, and called the police.

After the incident with the van, Hood and Lamb had an "'on and off' relationship" during which Lamb "lived with her at times and at others Hood prohibited the defendant from residing at the home with her and the children." On August 28, 2001, during a period when Lamb was not living in the home, Hood left the children with Kimberly Smith, who baby-sat the children in the home while Hood went to the store. Smith was in the living room with the youngest child when she heard what sounded like breaking glass coming from the direction of the front door. Lamb appeared in the living room, went straight to the youngest child (his natural son) and said, "Daddy's here, you're coming with me." He picked up the child and departed. Photographs introduced at trial revealed that the front door frame had been broken through by force.

At Hood's request, a magistrate issued two arrest warrants against Lamb. The first charged him with throwing a "missile at

-

or against an occupied motor vehicle" in violation of Code § 18.2-154 (a felony), while the second charged him with vandalism in violation of Code § 18.2-137 (a misdemeanor).

The misdemeanor vandalism charge went to trial in the juvenile and domestic relations district court. The court found Lamb "guilty as charged" and issued an active thirty-day jail sentence. Seeking a de novo trial in circuit court, Lamb appealed. The district court also certified the felony charge to the grand jury, which later returned an indictment.

At a bench trial in circuit court, the trial court convicted Lamb of both charges. After reviewing a presentence report, the court issued a five-year prison term (all suspended) for the felony and a twelve-month jail term (all but thirty days suspended) for the misdemeanor. At no time in the trial court did Lamb object to any alleged inconsistency between his misdemeanor arrest warrant and the sentence issued on that charge.

II.

A.

Lamb contends that the evidence was insufficient to sustain a conviction under Code § 18.2-154. That statute provides:

> Any person who maliciously shoots at, or maliciously throws any missile at or against, any train or cars on any railroad or other transportation company or any vessel or other watercraft, or any motor vehicle or other vehicles when occupied by

-

one or more persons, whereby the life of any person on such train, car, vessel, or other watercraft, or in such motor vehicle or other vehicle, may be put in peril, shall be guilty of a Class 4 felony.

The facts of this case, Lamb argues, "did not establish beyond a reasonable doubt that the life of any person in the van . . . may have been put in peril." We disagree.

Virginia appellate courts "presume the judgment of the trial court to be correct" and reverse on sufficiency grounds only if the trial court's decision is "plainly wrong or without evidence to support it." Wright v. Commonwealth, 39 Va. App. 698, 703, 576 S.E.2d 242, 244 (2003) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).

When faced with a challenge to the sufficiency of the evidence, a reviewing court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original and citation omitted). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

Under this standard, the evidence supports the trial court's finding that Lamb violated Code § 18.2-154. A violation of this code section occurs whenever the lives of persons in the

-

vehicle "<u>may</u> be put in peril."  Code § 18.2-154 (emphasis added).  As Hood testified, Lamb deliberately threw rocks with sufficient force to break out the rear window of the van.  Photographs admitted into evidence reveal a gaping hole, almost two feet in diameter, in the van's left rear window.  Given the size of the hole and the throwing velocity necessary to produce it, a rational fact finder could infer that the rocks penetrated the passenger compartment with sufficient violence to spray both rocks and glass in the direction of the three-year-old child in the back seat.

Lamb claims the trial court's conclusion rests on a speculative "presumption."  On the contrary, it is a rational inference well within the fact finder's discretion either to accept or reject.  Inferences are among the "elemental ingredients of the fact finding process."  <u>Carfagno v. Commonwealth</u>, 39 Va. App. 718, 727, 576 S.E.2d 765, 769 (2003) (citations omitted).  If reasonable, inferences permit a fact finder "to conclude the existence of one fact from the proof of one or more other facts."  <u>Id.</u>  Given the evidence before the trial court and the reasonable inferences deducible from it, we reject Lamb's assertion that the risk of harm created by his conduct did not satisfy the statutory peril requirement of § 18.2-154 as a matter of law.  <u>Cf.</u> <u>Kirby v. Commonwealth</u>, 264 Va. 440, 445, 570 S.E.2d 832, 835 (2002) (shooting near, but not necessarily at, intended victim satisfies the analogous "may be

-

put in peril" standard of Code § 18.2-279, which governs discharging a firearm at an occupied dwelling); Dowdy v. Commonwealth, 220 Va. 114, 117, 255 S.E.2d 506, 508 (1979) (Peril standard of Code § 18.2-279 does not require the prosecution to prove that "human life was, in fact, endangered."); Strickland v. Commonwealth, 16 Va. App. 180, 182, 428 S.E.2d 507, 508 (1993) (shooting a firearm into the ceiling of occupied room created the "possibility" of ricochet, thereby satisfying peril requirement of Code § 18.2-279).

### B.

Lamb also contests the vandalism conviction, arguing that the trial court improperly sentenced him under Code § 18.2-137(B) for intentional vandalism, a Class 1 misdemeanor, instead of § 18.2-137(A) for unlawful vandalism, a Class 3 misdemeanor. The arrest warrant, Lamb argues, did not charge him with a Class 1 misdemeanor. We disagree.

Under Rule 3A:4, an arrest warrant must describe the offense charged. Greenwalt v. Commonwealth, 224 Va. 498, 501, 297 S.E.2d 709, 710 (1982). "This description must comply with Rule 3A:7(a), which deals with the description of the charge that must be contained in an indictment." Id. at 501, 297 S.E.2d at 710-11. An indictment must "give an accused notice of the nature and character of the offense." Id. (citing Wilder v. Commonwealth, 217 Va. 145, 225 S.E.2d 411 (1976)). "The same,

-

therefore, is true of warrants." Id.; see also Williams v. Commonwealth, 5 Va. App. 514, 516, 365 S.E.2d 340, 341 (1988) (same principles govern a summons).

Notice ensures that the accused "can adequately prepare to defend against his accuser." King v. Commonwealth, 40 Va. App. ___, 2003 Va. App. LEXIS 61, at *6 (2003) (citations omitted). Mere "matters of form," however, do not require reversal "where no injury could have resulted therefrom to the accused." Id.; see also Boggs v. Commonwealth, 229 Va. 501, 519, 331 S.E.2d 407, 420 (1985) (A written charge "need not be drafted in the exact words of the applicable statute so long as the accused is given notice of the nature and character of the offense charged.").

In this case, the arrest warrant served on Lamb was a standard, preprinted form. In bold capital letters, it identified itself in this manner:

---

### Commonwealth of Virginia
**WARRANT OF ARREST**
**CLASS ___1___ MISDEMEANOR**

---

The narrative portion of the warrant included preprinted language and blanks for the magistrate to insert the date of the offense, the relevant statutory provision, and a brief

-

description of the charge.  This portion of Lamb's warrant, with the inserted portions in bold, stated:

> TO ANY AUTHORIZED OFFICER:
>
> You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the charge that the Accused, within this city or county, on or about ____**08/28/2001**____ did unlawfully in violation of Section __**18.2-137**__, Code of Virginia: _____
> **destroy, deface, or damage property belonging to Lisa Michelle Hood (Child in Common), with the value of, or damage to, such property being less than $1,000.00.**

As Lamb points out, the preprinted language included the word "unlawfully" before identifying the statute allegedly violated. He also correctly notes that the inserted language did not include the adverb "intentionally" before the phrase "destroy, deface, or damage property."  Several other facts, however, confirm that the arrest warrant sufficiently notified Lamb that he had been charged with the Class 1 misdemeanor of intentional vandalism.

First, the title of the arrest warrant prominently identified the charge as a Class 1 misdemeanor.  The magistrate underscored this point by stating on the face of the warrant: "Execution by summons not permitted."  Had Lamb been charged under § 18.2-137(A), a Class 3 misdemeanor requiring the use of a summons, the officers would have had no authority to take him into custody on an arrest warrant.  See Code § 19.2-74(A)(2); Farrow v. Commonwealth, 31 Va. App. 517, 521, 525 S.E.2d 11, 13

-

(2000) (Officer "was authorized by Code § 19.2-74(A)(2) only to issue defendant a summons for a Class 3 misdemeanor.").

Second, the juvenile and domestic relations district court imposed an active jail term —— a sentence that would be authorized for a Class 1, but not a Class 3, misdemeanor. See Code § 18.2-11(c) ($500 fine maximum punishment for Class 3 misdemeanor). When he appeared for trial de novo in circuit court, therefore, Lamb had ample notice of the nature of the Class 1 misdemeanor charge against him.

Third, in the context of the preprinted form used for all misdemeanors, the "unlawfully" adverb simply identifies what follows as a charge of illegality. This boilerplate language, given the other information on the warrant, does not limit the scope of the specific charge or alter the elements of the offense.

Fourth, in the narrative portion describing the specific offense, the magistrate inserted language that qualified the charge by specifying "the value of, or damage to, such property being less than $1,000.00." The magistrate drew this language from Code § 18.2-137(B)(i). This qualification has no relevance to subsection (A) and could be read only to confirm the nature of the charge as a Class 1 misdemeanor for intentional vandalism under subsection (B).

Finally, an ambiguity in a charging document, if it falls short of rendering the charge void or prejudicially misleading,

-

must be addressed by a pretrial motion under Rule 3A:9(b)(1) pointing out the defect in the "written charge" upon which the accused is to be tried. See Harris v. Commonwealth, 39 Va. App. 670, 674, 576 S.E.2d 228, 230 (2003) (en banc). Cf. Livingston v. Commonwealth, 184 Va. 830, 840, 36 S.E.2d 561, 566 (1946) ("If the accused was not satisfied with the indictment he should have demurred or called for a bill of particulars at the proper time."). Having failed to file such a motion and, indeed, having not raised the issue at all, Lamb waived any challenge to the warrant's alleged ambiguity. See Rules 3A:9(b)(1) and 5A:18.

In sum, we hold that the arrest warrant sufficiently notified Lamb that he faced a Class 1 misdemeanor charge of intentional vandalism and did not prejudicially mislead him into believing he faced a Class 3 misdemeanor charge of unlawful vandalism. Lamb's failure to object to the active jail sentence, either at the district court or the circuit court level, confirms that Lamb understood the nature and character of the charge against him.

### III.

The trial judge did not err in finding that Lamb violated Code § 18.2-154 by hurling rocks at an occupied van. Nor did the trial court err by sentencing Lamb on a conviction for

-

intentional vandalism, a Class 1 misdemeanor.  We thus affirm

Lamb's convictions.

<u>Affirmed</u>.
