COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and McCullough
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 1002-14-4        JUDGE RANDOLPH A. BEALES
NOVEMBER 25, 2014

MARK NATHANIEL VICK, III


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General of Virginia, on briefs), for appellant.

Fikri A. Ramadan, Assistant Public Defender (Officer of the Public
Defender, on brief), for appellee.


Mark Nathaniel Vick, III was charged with one count of possession of a Schedule II

substance in violation of Code § 18.2-250 and one count of possession of marijuana in violation of

Code § 18.2-250.1.  Vick made a motion to suppress the evidence on the ground that the police

officers had obtained the drugs in violation of the Fourth Amendment.  The trial court granted

Vick's motion to suppress the evidence.[1]  As permitted by Code § 19.2-398(A)(2), the

Commonwealth appeals the trial court's ruling on Vick's motion to suppress the evidence.  The

Commonwealth raises the following assignments of error:

I.  The circuit court erred when it ruled that the police and Vick
were not engaged in a consensual encounter when Vick consented
to a search of his backpack.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Code § 19.2-398, this Court reviews the Commonwealth's appeal of the
pretrial suppression order only insofar as it pertains to the felony indictment for possession of a
Schedule II substance in violation of Code § 18.2-250 (and not the misdemeanor charge of
possession of marijuana in violation of Code § 18.2-250.1).

II. The circuit court erred when it ruled that reasonable suspicion did not exist to detain Vick.

We hold that under the particular facts and circumstances of this case, the trial court did not err when it granted Vick's motion to suppress, and, accordingly, for the following reasons, we affirm the trial court's decision.

## I. BACKGROUND

We consider the evidence on appeal "'in the light most favorable to [Vick] as we must since [he] was the prevailing'" party in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)). In this case, Officer Brian Bedenbaug of the Metro Transit Police testified that he encountered Vick asleep on the yellow line during rush hour. The train was held so that Officer Bedenbaug could investigate the situation. Officer Bedenbaug was able to wake up Vick by stating in a firm voice, "Metro Transit Police, Metro Transit Police." After about two or three minutes, Vick awoke. As soon as Vick awoke, Officer Bedenbaug, who testified that he suspected Vick was either under the influence of drugs or evading Metro fare, removed Vick from the train and led him to the train platform. Soon after Vick and Officer Bedenbaug headed to the platform, Officer Guida, also of the Metro Transit Police, joined them. Officer Bedenbaug asked Vick his name, at which point Vick handed over his ID. The officers ran Vick's information through NCIC[2] to see if he had any outstanding warrants. Officer Bedenbaug testified that, in his mind, once the officers started running Vick's information through NCIC, Vick was not free to leave. While the officers waited for the results to return on the warrant check and while they were still in possession of Vick's ID, Officer Guida asked Vick if he could search Vick's backpack. According to Officer Bedenbaug's testimony, Vick responded "yes" to Officer Guida and handed Officer Guida his

---

[2] NCIC refers to the "National Crime Information Center" database. See Herring v. United States, 555 U.S. 135, 155 (2009).

backpack. Upon then searching Vick's backpack, Officer Guida found some marijuana and some cigarettes dipped in phencyclidine (PCP).

In granting Vick's motion to suppress, the trial court determined that Officer Bedenbaug lacked reasonable articulable suspicion to detain Vick – and that the encounter between Vick and the two police officers was not a consensual one.[3] In ruling that the Commonwealth did not meet its burden of proof that Officer Bedenbaug had reasonable, articulable suspicion to conclude that Vick was intoxicated by drugs in public, the trial court found as follows:

> The Court had the opportunity to observe the demeanor of the witness, and the Court notes there was no notation in the officer's report to show any indicia of drug influence. *The Court was not convinced by the testimony that at the time of the encounter the officer may have thought the defendant was intoxicated.*

(Emphasis added). Therefore, the trial court made a finding of fact and credibility that rejected at least a portion of the officer's testimony that was important to determining whether reasonable articulable suspicion had been established. The trial court also found that there were no facts to support reasonable articulable suspicion that Vick was planning to evade the Metro fare.[4]

Regarding whether the encounter between the police officers and Vick was consensual – and whether Vick voluntarily consented to the search of his backpack, the trial court ruled as follows:

> The testimony was that the defendant was then removed from the train, not physically, but was removed from the train; and the train

---

[3] The Commonwealth has never argued (at trial or on appeal) that the community caretaker exception to the warrant requirement would justify Officer Bedenbaug's detention of Vick because, for example, of concern that he might be ill or otherwise in concern for his welfare. "[T]he community caretaker exception, . . . recognizes that 'police owe duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis.'" Kyer v. Commonwealth, 45 Va. App. 473, 480-81, 612 S.E.2d 213, 217 (2005) (quoting Reynolds v. Commonwealth, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990) (internal quotations omitted)).

[4] The Commonwealth chose not to appeal the trial court's finding on the Metro fare issue.

was held for a period of time in order for the officer to address the defendant on the train. . . . According to the testimony of the officer, the defendant was pulled from the train and was not free to leave at the time the consent was requested and provided. The Commonwealth has the burden to prove a reasonable person would have felt free to go. Based on this record, the defendant was awoken, pulled off the train, and asked his name. The officer wanted to check his name against the NCIC, and the evidence indicates the defendant's ID was held while this was done. Certainly that's the reasonable inference from the evidence. The officer testified that the defendant was detained. Based on this record, the Court finds that the Commonwealth failed to meet its burden that a reasonable person would have felt they were free to go. Based on this record, the question then is so long as a person is not free to go, was there consent to search? One of the cases that the Commonwealth provided was Londono. In that the Court citing Dickerson stated: "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual. No reasonable suspicion is required." So the question is was there consent? There was not.

## II. ANALYSIS

When a trial court grants a defendant's motion to suppress evidence, the Commonwealth's claim that the trial court's decision was in error "'presents a mixed question of law and fact that we review *de novo* on appeal.'" Jones v. Commonwealth, 277 Va. 171, 177, 670 S.E.2d 727, 731 (2009) (quoting McCain v. Commonwealth, 275 Va. 546, 551-52, 659 S.E.2d 512, 515 (2008) (citations omitted)). In reviewing the trial court's decision to grant the motion to suppress, "we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. (citations omitted)). "We view the evidence in a light most favorable to [Vick], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citing Commonwealth v. Holloway, 9 Va. App. 11, 20, 384 S.E.2d 99, 104 (1989)).

- 4 -

The Fourth Amendment of the United States Constitution states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

If an encounter between a police officer and a citizen is "consensual," then the encounter is not a seizure and the Fourth Amendment is not even implicated. See, e.g., Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992). An encounter is "consensual" if the circumstances are such that "a reasonable person would feel free to disregard the police and go about his business." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 4 (2008) (quotations and citations omitted); see United States v. Mendenhall, 446 U.S. 544, 554 (1980) (explaining that a person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave").

The Commonwealth's first assignment of error[5] is based on the premise that the encounter between Vick and the two police officers was consensual at the outset and remained

---

[5] Here, we need not – and do not – reach the Commonwealth's argument in its second assignment of error that the trial court erred when it found that Officer Bedenbaug did not have reasonable, articulable suspicion that Vick was under the influence of drugs. Resolution of the Commonwealth's second assignment of error does not resolve the ultimate issue on appeal–i.e., whether the trial court erred in granting Vick's motion to suppress the evidence found in his backpack. The second assignment of error does not actually properly encompass the argument that the trial court erred in finding that Vick did not consent to the search of the backpack because, unlike the first assignment of error, it says nothing about the search of the backpack. "'The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment . . . .'" Kirby v. Commonwealth, 264 Va. 440, 444-45, 570 S.E.2d 832, 834 (2002) (quoting Yeatts v. Murray, 249 Va. 285, 290, 455 S.E.2d 10, 21 (1995)). Because the Commonwealth did not lay its finger on the error (i.e., consent to search the backpack) in its second assignment of error, we do not address its argument on the subject of reasonable articulable suspicion, id. at 445, 570 S.E.2d at 834, for, even if we found reasonable articulable suspicion existed here, that does not matter if there is no valid consent to search the backpack.

consensual throughout the encounter. Viewing the evidence in the light most favorable to Vick, as we must since he was the prevailing party below, we find that the trial court did not err when it determined that the encounter between Vick and the two police officers was not a consensual one. The trial court made a number of factual findings that support its determination that the motion to suppress should be granted since the encounter was non-consensual. The trial court found that the train was held for some time so that Officer Bedenbaug could approach, address, and awaken Vick and that he was then removed from the train. The trial court also made a finding of fact that Vick was "awoken, pulled off the train, and asked his name." Moreover, the trial court found, as a finding of fact, that the officers were holding Vick's ID card while they were waiting for the results of the NCIC search to come back to them. The trial court also noted Officer Bedenbaug's testimony that, in his mind, Vick was not free to leave when the officers were awaiting the results of the NCIC database search.[6] Based on this record, the trial court's factual findings are not plainly wrong. See Code § 8.01-680. The record supports the trial court's ultimate determination that the encounter between the officers and Vick was not consensual because a reasonable person in Vick's position would not have felt free to leave the scene.

Therefore, the Commonwealth comes from an incorrect premise in its first assignment of error by alleging that the encounter between the officers and Vick was consensual when Officer Guida sought, and obtained, consent to search the backpack. The encounter was not consensual, as we have concluded *supra*. Furthermore, we note that the Commonwealth's first assignment of error also presumes that Vick *validly* consented to a search of the backpack. However, the trial court

---

[6] "The United States Supreme Court has repeatedly rejected any consideration of the subjective motivation of a law enforcement officer in determining whether police searches were constitutionally infirm and, instead, has relied on an objective view of the facts and circumstances of each particular case." Robinson v. Commonwealth, 273 Va. 26, 36, 639 S.E.2d 217, 222 (2007) (citations omitted). However, the trial court relied on much more than just Officer Bedenbaug's subjective view of whether Vick was free to leave in arriving at its conclusion that Vick was seized for purposes of the Fourth Amendment.

found that Vick did not actually give Officer Guida a valid consent to search the backpack. To the extent that the Commonwealth's first assignment of error challenges the trial court's finding that Vick did not validly consent to a search of the backpack, we cannot say that the trial court erred.

At the suppression hearing, the Commonwealth had the burden of establishing that Vick validly consented to a search of the backpack. It is well-settled that "the fourth amendment prohibition against unreasonable searches and seizures may be waived by free and voluntary consent of the defendant to the search and seizure." Crosby v. Commonwealth, 6 Va. App. 193, 197, 367 S.E.2d 730, 733 (1988) (citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). However, for consent to be valid, it "must be voluntarily given." Elliott v. Commonwealth, 61 Va. App. 48, 54, 733 S.E.2d 146, 149 (2012). For consent to be voluntarily given, the will of the person giving consent must not be overborne. See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). "The 'question of the voluntariness of a consent is one of fact to be determined by the trial court.'" Id. (quoting Stamper v. Commonwealth, 220 Va. 260, 268, 257 S.E.2d 808, 814 (1979)). Based on the trial court's factual findings related to voluntariness that are noted above – and viewing the evidence in the light most favorable to Vick, as the prevailing party at the suppression hearing – we cannot say that the trial court erred when it determined that Vick's apparent consent to search the backpack was invalid because the consent was not voluntarily given.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Vick, as we must since he was the prevailing party below, and giving proper deference to the trial court's findings of fact, we conclude that the trial court did not err in granting Vick's motion to suppress the evidence that was seized from his backpack. Accordingly, for the foregoing reasons, we affirm the trial court's suppression

order and remand the matter to the trial court for further proceedings consistent with this opinion, if the Commonwealth is so inclined.

<u>Affirmed.</u>