COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Decker and Russell
Argued at Richmond, Virginia

UNPUBLISHED

JOHN DANIEL HOLSINGER

v.      Record No. 0743-16-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
MARCH 14, 2017

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

Buddy A. Ward, Public Defender, for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


John Daniel Holsinger appeals his conviction for unlawfully discharging a firearm within

an occupied dwelling in violation of Code § 18.2-279.  He argues that the evidence was

insufficient to support his conviction because it did not prove that the life of an occupant of the

building was placed in peril.  For the reasons that follow, we affirm the conviction.

I.  BACKGROUND[1]

On September 8, 2015, the appellant and Jeannie Garner were at their shared residence.

According to Garner, the appellant had consumed more alcohol than normal that night.  The

appellant became "upset because he couldn't find his phone charger."  Garner found his charger

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In reviewing the sufficiency of the evidence supporting a conviction, we consider the
evidence in the light most favorable to the Commonwealth granting to it all reasonable
inferences that flow from the evidence.  King v. Commonwealth, 264 Va. 576, 578, 570 S.E.2d
863, 864 (2002).  "That principle requires us to 'discard the evidence of the accused in conflict
with that of the Commonwealth . . . .'"  Blow v. Commonwealth, 52 Va. App. 533, 536, 665
S.E.2d 254, 255 (2008) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,
759 (1980)).

and gave it to him, but the appellant was still angry.  He removed food from the freezer, threw the food into the backyard, and shot it with his handgun.  The appellant also threw various packages of food onto the kitchen floor.  Garner explained that after making the mess, the appellant "started . . . trying to clean up."  However, he put the food in the cat's litter box instead of the garbage can.

The appellant then went outside with a trash bag and gathered the food that he had thrown into the yard and put it in the bag.  The appellant put the bag inside the house and went back outside.  Garner sorted through the garbage bag and placed the undamaged food items back into the freezer.  The appellant returned to the kitchen and saw what she was doing.  He pulled the food back out of the freezer, threw it into the backyard, and, while standing on the porch, shot it again.  Garner began to remove the items of food from the litter box.

Again, the appellant went outside with a trash bag, picked up the food, and came back into the house.  Garner closed the door behind him.  The appellant approached the door and kicked it, in an apparent attempt to open it.  Garner stopped cleaning the litter box momentarily to open the door for him.  The appellant dropped the bag he was holding, and while standing in the open doorway and facing outside, he fired his weapon toward the backyard.  Garner explained that even though the door was "open," he "shot the window out of the door."  When the appellant fired the gun, Garner was in the kitchen kneeling at the litter box, "behind and diagonal" from the appellant and an "[a]rm's length" from the door.  After the appellant fired the weapon, Garner stood up, went to her bedroom, and called 911.

A photograph of the door, showing that the bottom of the door was solid and the top portion included a six-pane glass window, was introduced into evidence at trial.  The photo also showed the shattered glass of the door's window and a large amount of broken glass on the floor

inside the house. Garner testified that when the appellant shot at the door, the glass "just fell like straight down."

Deputy Cody Mull of the Mecklenburg County Sheriff's Office responded to the 911 call. He did not find any shell casings in the backyard. The firearm itself was not admitted into evidence at trial.

The appellant made a motion to strike the evidence. He argued, in pertinent part, that Garner was not put in peril by his actions. The appellant contended that the statutory language defining the offense required that the Commonwealth show that Garner's life was actually placed in peril, not that it may have been placed in peril. He alternatively reasoned that even under the lesser standard, no evidence showed that anyone's "life might have been put in peril." The Commonwealth stressed that the "possibility of putting someone's life in danger" was a factual question for the trial court to resolve. The prosecutor also suggested that the evidence was sufficient to prove the offense because of the appellant's awareness of Garner's proximity to him and due to the inherent possibility of a ricochet.

The trial court found that the appellant "was highly intoxicated," "was inside" the residence, and "shot out through the glass." The court concluded that the appellant "shot at the dwelling because the door is part of the dwelling." It also found that "the possibility that the bullet might have hit a metal part or solid object in the ceiling and ricocheted" was sufficient to prove that the appellant discharged the firearm in a manner that endangered Garner's life. The court denied the motion to strike and found the appellant guilty of unlawfully discharging a firearm within an occupied dwelling. He was sentenced to five years in prison, with all time suspended except for time served.

## II. ANALYSIS

The appellant argues that the evidence was insufficient to support his conviction for unlawfully discharging a firearm within an occupied building. He contends that the Commonwealth failed to prove that his actions endangered Garner, who was inside the residence at the time that he fired the gun.

To the extent that this case involves interpretation of Code § 18.2-279, the interpretation of a statute is a question of law, which we review *de novo*. L.F. v. Breit, 285 Va. 163, 176, 736 S.E.2d 711, 718 (2013); Ngomondjami v. Commonwealth, 54 Va. App. 310, 319, 678 S.E.2d 281, 286 (2009). However, in reviewing the sufficiency of the evidence, on factual findings we defer to the trial court unless its findings are "plainly wrong or without evidence to support [them]." Kelley v. Commonwealth, 289 Va. 463, 468, 771 S.E.2d 672, 674 (2015) (quoting Code § 8.01-680); Blow v. Commonwealth, 52 Va. App. 533, 538, 665 S.E.2d 254, 256 (2008) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). "[W]e do not 'substitute our judgment for that of the trier of fact'" on those determinations. Blow, 52 Va. App. at 538-39, 665 S.E.2d at 256 (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). The pivotal question on appellate review of a sufficiency challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 539, 665 S.E.2d at 256-57 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Code § 18.2-279, in pertinent part, prohibits a person from maliciously or unlawfully

> discharg[ing] a firearm within any building when occupied by one or more persons *in such a manner as to endanger the life or lives of such person or persons* when occupied by one or more persons, or . . . shoot[ing] at, or . . . throw[ing] any missile at or against any . . . building when occupied by one or more persons, *whereby the life or lives of any such person or persons may be put in peril*."

- 4 -

(Emphases added). "[T]he offense as defined by the statute is not a specific intent crime; rather, it is a general intent offense."[2] Fleming v. Commonwealth, 13 Va. App. 349, 354, 412 S.E.2d 180, 183 (1991) (rejecting the argument that the statute required a showing that the shooter intended to shoot the building).

"[T]he legislative purpose of the statute is meant to prohibit unlawful conduct, whether malicious or merely criminally reckless, which has the potential to endanger the lives of persons inside occupied buildings, without regard to the shooter's actual motive or intent in unlawfully discharging a firearm." Ellis v. Commonwealth, 281 Va. 499, 506, 706 S.E.2d 849, 852 (2011) (holding that to support a conviction for discharging a firearm "at or against any occupied building," the Commonwealth need not establish that the defendant had a specific intent to shoot a particular building). The Supreme Court of Virginia construed the "statute as a legislative declaration that human lives may be endangered when a deadly weapon is maliciously discharged *at or against* a building occupied by people." Dowdy v. Commonwealth, 220 Va. 114, 117, 255 S.E.2d 506, 508 (1979) (emphasis added) (holding that to prove the offense of maliciously discharging a firearm at or against an occupied building, the Commonwealth does not need to prove that the defendant endangered an occupant's life). Consequently, the Court reasoned that "this legislative determination relieves the Commonwealth of the burden of proving that human life was, in fact, endangered." Id.

The appellant contends that the statutory language "whereby the life or lives of any such person or persons may be put in peril" applies only to someone who discharged a firearm "at" a building, not to someone who discharged a weapon "within" a building. As a starting point to the analysis, we look to the language of the statute. The pertinent language of Code § 18.2-279 prohibits a person from unlawfully

---

[2] The appellant does not contest that Code § 18.2-279 defines a general intent crime, nor does he challenge the sufficiency of the evidence to support the element of intent.

- 5 -

> discharg[ing] a firearm within any building when occupied by one
> or more persons *in such a manner as to endanger the life or lives
> of such person or persons* . . . or . . . shoot[ing] at, or . . .
> throw[ing] any missile at or against any . . . building when
> occupied by one or more persons, *whereby the life or lives of any
> such person or persons may be put in peril*."

(Emphases added). The appellant argues that this language should be read as two separate clauses. He suggests that the "lives . . . *may* be put in peril" language applies only to the second clause which references shooting "at" or "against" an occupied building.[3] Id. (emphasis added). Conversely, the appellant interprets the first clause as prohibiting someone from unlawfully "discharg[ing] a firearm within any building . . . in such a manner as to [actually] endanger the life or lives of" the occupants. See Code § 18.2-279. Consequently, he reasons that his conviction for shooting a firearm *within* the residence required proof that Garner's life was actually placed in peril.

The Supreme Court of Virginia has made clear, however, that to support a conviction under Code § 18.2-279, the Commonwealth need not show that the victim was actually put in peril, harmed, or even that the defendant fired a bullet in an occupant's direction. Kirby v. Commonwealth, 264 Va. 440, 445, 570 S.E.2d 832, 835 (2002). The Supreme Court explained in Kirby, that in the context of a shooting "within" a building, "[a]ll the Commonwealth [is] required to show [is] that the discharge of the firearm *may have* put [the victim's] life in peril."

---

[3] Absent legal authority to the contrary, the statutory interpretation principle of the "rule of the last antecedent" would appear to support the appellant's proposition. "Under that rule, '[r]eferential and qualifying words and phrases, where no contrary intention appears, refer *solely to the last antecedent*.'" Newberry Station Homeowners Ass'n v. Bd. of Supers., 285 Va. 604, 615, 740 S.E.2d 548, 554 (2013) (alteration in original) (emphasis added) (quoting Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565-66 (2004)). "An 'antecedent' is defined as a 'preceding thing,' or 'any word or group of words replaced or referred to by a substitute.'" Scott v. Commonwealth, 292 Va. 380, 383 n.2, 789 S.E.2d 608, 609 n.2 (2016) (first quoting Black's Law Dictionary 107 (9th ed. 2009); then quoting Webster's Third New International Dictionary 91 (1993)). "The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" Newberry Station, 285 Va. at 615, 740 S.E.2d at 554 (quoting Alger, 267 Va. at 259, 590 S.E.2d at 566).

Id. (emphasis added) (interpreting the same language in Code § 18.2-279 (2000)). Accordingly, the Supreme Court has already rejected the precise argument advanced by the appellant.

In Kirby, the Court analyzed Code § 18.2-279 in the context of an unlawful discharge of a firearm within a dwelling. Id. at 445-46, 570 S.E.2d at 834-35. In that case, the defendant, while sitting on the bed in a residence, fired two rounds from a .22 caliber pistol into the floor. Id. at 443, 570 S.E.2d at 833. At the time, the victim sat in view of the defendant on the sofa in the living room. Id. The record showed that the defendant was intoxicated and angry with the victim. Id. The Court held that the Commonwealth presented evidence sufficient to show that the defendant's actions "may have" placed the victim's life in peril for purposes of Code § 18.2-279. Id. at 445, 570 S.E.2d at 835. Consequently, the Court affirmed the conviction. Id. at 446, 570 S.E.2d at 835.

The interpretation of Code § 18.2-279 applied by the Supreme Court in Kirby is binding on this Court. See generally Anderson v. Commonwealth, 48 Va. App. 704, 712-13, 634 S.E.2d 372, 376 (2006), aff'd, 274 Va. 469, 650 S.E.2d 702 (2007). Kirby is controlling here, and we do not have the discretion to entertain the appellant's alternative interpretation of Code § 18.2-279.[4] As a result, the sole question for this Court to resolve is whether, applying the proper appellate standard of review, the evidence was sufficient to prove that the appellant's

---

[4] In addition, the appellant's argument relies on the premise that he shot *within* the building and not *at* the building. He suggests that the shooter's location, either inside or outside of the building in question, affects how Code § 18.2-279 applies. However, this Court previously concluded that the shooter's location is irrelevant to the application of Code § 18.2-279. King v. Commonwealth, 40 Va. App. 193, 199, 578 S.E.2d 803, 806 (2003) (noting that "Code § 18.2-279 does not specify where the shooter must be located in relation to the occupied dwelling, and we can discern no legislative directive implicating such a limitation). Further, the trial court specifically found that although the appellant was "within" the house, he shot "at" it. The appellant does not challenge this factual finding on appeal. See Rule 5A:12(c)(1)(i) (providing that this Court is limited to reviewing the assignments of error presented by the litigant). Therefore, even under the appellant's proposed interpretation of Code § 18.2-279, since he shot "at" the house, albeit from within, the Commonwealth needed to prove only that the shooting "may" have put Garner's life in peril.

discharge of his handgun within the house "may have" put Garner's "life in peril." See Kirby, 264 Va. at 445, 570 S.E.2d at 835.

Here, the evidence proved that Garner was in very close proximity to the appellant and the door when he fired the weapon inside the residence. As in Kirby, the possibility that the bullet could have hit a solid object—such as the solid portion of the door, the frame, or the exterior porch— and ricocheted provided the trial court with sufficient evidence to conclude that the appellant's discharge of the firearm within the confined area and in close proximity to Garner *may* have placed her life in peril. See id.; Strickland v. Commonwealth, 16 Va. App. 180, 182, 428 S.E.2d 507, 508 (1993) (holding that, without reference to specific evidence on the possibility of ricochet or the type of gun, the "sho[oting of a] gun into the ceiling while in close proximity to seventy-five persons within a confined space . . . constituted a reckless act that endangered lives"). In addition, the fact that the appellant was irrational and angry supported the finding that his discharge of the firearm may have imperiled Garner's life. See Kirby, 264 Va. at 443, 570 S.E.2d at 833 (noting the defendant's anger). Finally, the trial court was entitled to take into consideration the appellant's intoxicated state at the time that he fired the weapon at the door. See, e.g., Stevens v. Commonwealth, 272 Va. 481, 488, 634 S.E.2d 305, 310 (2006) (considering the defendant's high level of intoxication in affirming the jury's finding that his conduct was "gross, wanton, and culpable" in running a red light and crashing into another vehicle in the intersection).

Based on the totality of the circumstances, the trial court was not plainly wrong in concluding that the appellant's discharge of the handgun may have placed Garner's life in peril. The judge could reasonably conclude that the appellant's firing of his weapon through the kitchen door could have endangered Garner's life in light of his irrational, angry, and intoxicated state combined with his extremely close proximity to her at the time that he discharged the

deadly weapon.  Based on the record before us, the evidence was sufficient to support the appellant's conviction.

### III.  CONCLUSION

The circumstances existing at the time that the appellant discharged his weapon through the kitchen door support the trial court's finding that his actions may have placed Garner's life in peril.  The evidence was sufficient to prove the offense.  Consequently, we affirm the judgment of the trial court.  We remand the case solely for correction of a clerical error in the sentencing order, which incorrectly states that the conviction was for unlawful wounding rather than unlawful discharge of a firearm.  Code § 8.01-428(B); see, e.g., Howell v. Commonwealth, 274 Va. 737, 742, 652 S.E.2d 107, 109 (2007).

Affirmed and remanded.