PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.

No. 95-5287

ANTHONY MARCELLUS BAKER,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Peter J. Messitte, District Judge.
(CR-94-361-PJM)

Argued: February 1, 1996

Decided: March 13, 1996

Before WILKINS, LUTTIG, and MOTZ, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Wilkins wrote
the opinion, in which Judge Luttig and Judge Motz joined.

_____

COUNSEL

**ARGUED:** Sandra Lee Wilkinson, Assistant United States Attorney,
Greenbelt, Maryland, for Appellant. Robert W. Mance, III, Washing-
ton, D.C., for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Greenbelt, Maryland, for Appellant.

_____

**OPINION**

WILKINS, Circuit Judge:

Anthony Marcellus Baker was indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C.A.§ 922(g) (West Supp. 1995). Before trial, the district court granted his motion to suppress the firearm as evidence on the basis that its seizure was the product of an unreasonable search. We reverse.

I.

While on patrol at approximately 1:20 a.m. on January 25, 1994, United States Park Police Officer Pope observed four automobiles that appeared to be travelling together proceed through a red traffic light in close succession and turn onto the Suitland Parkway in Maryland, an area within the jurisdiction of the Park Police. As the officer began pursuing the vehicles, the driver of the last automobile significantly decreased his speed and began swerving back and forth in the highway in an apparent attempt to prevent the officer from overtaking the other three vehicles. After another officer responded to his call for assistance, Officer Pope was able to pass the last automobile and pursue the other three. Although one automobile escaped by turning off of the Parkway and leaving the jurisdiction of the Park Police, Officer Pope succeeded in effecting a traffic stop of the two remaining vehicles, the second of which was driven by Baker.

In response to a question from Officer Pope, the driver of the first automobile related that the four drivers knew each other and were travelling together. He then moved to Baker's vehicle and repeated the question. Baker denied knowing the other three drivers. During this conversation, Officer Pope observed a triangular-shaped bulge underneath the front of Baker's shirt, near the waistband of his pants. In order to determine whether Baker was carrying a concealed weapon, Officer Pope ordered Baker to lift his shirt above the bulge. Twice, he quickly raised his shirt approximately an inch and then dropped it, preventing the officer from observing what was concealed underneath. Finally, Baker lifted his shirt sufficiently to permit Officer Pope to see a handgun tucked into the waistband of his pants.

2

Ordering Baker to raise his hands, Officer Pope drew his weapon and requested assistance via his radio. After initially complying with the officer's request, Baker slowly dropped his hands and pushed the door of the vehicle into Officer Pope, who quickly kicked it shut. Baker then exited the automobile on the passenger side and moved toward the rear of the vehicle. He removed the weapon from his waistband and, after lifting it approximately to shoulder height, dropped it, turned, and ran. Several months later, he was apprehended and charged with violating § 922(g).

Baker filed a pretrial motion to suppress the firearm, arguing that both the traffic stop and the resulting search were unreasonable under the Fourth Amendment. The district court ruled that the stop was lawful, but granted the motion to suppress, concluding that the evidence was obtained as a result of an unlawful search. It reasoned that Officer Pope had no justification to believe that Baker was armed and dangerous* and that even if the officer reasonably could have formed such a belief, he should have conducted a "patdown frisk" instead of directing Baker to raise his shirt. The Government appeals. See 18 U.S.C.A. § 3731 (West Supp. 1995).

_____

*The record is somewhat ambiguous concerning whether the district court ruled that Officer Pope lacked a reasonable basis to conduct a protective search. Baker has briefed the issue as though the district court so ruled, and we view the record as supporting this determination. The district court initially stated that it would accept "for the time being" that the officer possessed a proper basis for a Terry search and that it was "not deciding today that there was no basis for a Terry search." J.A. 179. Nevertheless, it later stated:

> In this case it was a routine, straightforward traffic stop. There was nothing--I emphasize nothing--in the defendant's actions that gave the officer any reason to believe that he was threatened. A bulge alone will not do it. The fact that it was one o'clock in the morning will not do it. People carry weapons or don't carry weapons at one o'clock. No indication that it was a high crime area. And I cannot find, on the basis of the mere inconsistent stories given by the two, that that raised the whole transaction to the level of articulable suspicion to permit the kind of intrusion that went on here.

J.A. 185.

3

II.

The district court was in error in concluding that Officer Pope lacked a proper basis to conduct a protective search. Because of the hazards involved in a roadside encounter with a suspect, a law enforcement officer may conduct a protective search aimed at uncovering concealed weapons after making a proper traffic stop if the officer "possesses a reasonable belief based on `specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous." Michigan v. Long, 463 U.S. 1032, 1049 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). An officer's belief must be based not on subjective hunches but on information sufficient to cause a reasonably prudent person under the circumstances to believe that either his safety or that of others is in danger. Terry, 392 U.S. at 27; see also Long, 463 U.S. at 1050; Adams v. Williams, 407 U.S. 143, 146 (1972).

The question of whether Officer Pope possessed a reasonable belief that Baker was armed and dangerous need not detain us long. Based on the inordinate risk of danger to law enforcement officers during traffic stops, observing a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation. Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977) (per curiam) ("The bulge in the jacket permitted the officer to conclude that [the suspect] was armed and thus posed a serious and present danger to the safety of the officer."). Accordingly, the district court erred in concluding that there was no basis on which Officer Pope reasonably could suspect that Baker was armed and dangerous. See United States v. Perrin, 45 F.3d 869, 871 (4th Cir.) (determination of reasonableness of suspicion to support protective search subject to de novo review), cert. denied, 115 S. Ct. 2287 (1995).

III.

The district court was also in error in concluding that the manner in which Officer Pope conducted the search of Baker was unreasonable. Determining the reasonableness of a protective search involves balancing the officer's interest in self-protection against the intrusion

4

on individual rights necessitated by the search. See Long, 463 U.S. at 1046 (citing Terry, 392 U.S. at 21). A police officer's interest in self-protection arises when he reasonably believes that a suspect is armed and dangerous; at that point, he has an interest in "taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." Terry, 392 U.S. at 23. The steps taken by the officer for self-protection, however, necessarily intrude upon the individual's interest in personal security, which is protected from unreasonable governmental intrusion by the Fourth Amendment. See id. at 19. To determine whether the intrusion was reasonable under the Fourth Amendment, a court must analyze the competing interests of the officer and the individual. Id. at 20-21; see also Long, 463 U.S. at 1046-47.

In finding that Officer Pope was restricted to conducting a patdown frisk, the district court erroneously concluded that a patdown frisk was the only permissible method of conducting a Terry search. This reasoning is incorrect because the reasonableness of a protective search depends on the factual circumstances of each case. See Terry, 392 U.S. at 29; cf. Sibron v. New York, 392 U.S. 40, 59 (1968) ("The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case."). Thus, a patdown frisk is but one example of how a reasonable protective search may be conducted. Cf. Adams, 407 U.S. at 147-48 (officer acted reasonably under the circumstances by reaching directly for weapon in waistband of suspect's pants); United States v. Hill, 545 F.2d 1191, 1193 (9th Cir. 1976) (per curiam) (officer acted reasonably in lifting shirt of suspect to identify source of bulge in clothing).

Balancing the officer's interest in self-protection against the resulting intrusion upon Baker's personal security, we hold that Officer Pope's direction was reasonable under the circumstances. Having formed a reasonable belief that Baker was carrying a weapon, Officer Pope had an immediate interest in determining whether Baker actually was armed and, if so, neutralizing any potential threat without assuming unnecessary risks. See Terry, 392 U.S. at 24. Directing that he raise his shirt required little movement by Baker and allowed Officer Pope to immediately determine whether Baker was armed without

5

having to come in close contact with him. And, it minimized the risk that he could draw his weapon before Officer Pope could attempt to neutralize the potential threat. In comparison, complying with this direction involved a limited intrusion upon Baker's personal security. Indeed, this act was less intrusive than the patdown frisk sanctioned in Terry. The officer avoided the "serious intrusion upon the sanctity of the person" necessitated by the patdown frisk, which requires the officer to "feel with sensitive fingers every portion of the prisoner's body." Terry, 392 U.S. at 17 & n.13. In sum, based on a balancing of the necessity for the search against the intrusion caused by the search, directing that Baker raise his shirt constituted a reasonable search limited to discovering whether he was carrying a concealed weapon. Cf. id. at 29-30 (applying de novo review to determine the reasonableness of the method of a protective search).

IV.

For the reasons stated above, we have no difficulty in concluding that this search was reasonable. Because the district court improperly granted Baker's motion to suppress, we reverse the decision and remand to the district court.

REVERSED AND REMANDED

6