COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Kelsey, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia

LEON ELLIOTT, JR.

OPINION BY
v.      Record No. 1784-11-1                    JUDGE D. ARTHUR KELSEY
                                                OCTOBER 23, 2012

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

Kurt A. Gilchrist for appellant.

Alice T. Armstrong, Assistant Attorney General II
(Kenneth T. Cuccinelli, II, Attorney General, on brief),
for appellee.

The trial court convicted Leon Elliott, Jr., of heroin possession.  On appeal, Elliott

contends the arresting officer violated the Fourth Amendment by discovering the heroin during a

warrantless search of Elliott's pocket.  We disagree and affirm Elliott's conviction.

I.

When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers." Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation

omitted).  In doing so, we consider facts presented both at the suppression hearing and at trial.

See Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009).

From this perspective, the evidentiary record shows that Portsmouth police officers

conducted a "spotting operation" at a convenience store during a narcotics investigation.  App. at

7. They observed a man in possession of a "clear plastic baggie that contained suspected capsules of heroin." Id. at 10. The man entered the passenger side of a parked car, which then drove away. The spotting officer radioed his observations to other officers in the vicinity.

The supervising officer, Lieutenant Scott Agee, was parked down the street in an unmarked police cruiser. He heard the broadcast and saw the suspect's vehicle traveling down the road from the convenience store. After Agee stopped the vehicle, several other officers arrived on the scene. When asked whether any of the officers "had their guns fully drawn," Agee testified, "No, not to my knowledge, not that I can recall; I didn't." Id. at 18. Instead, he had his handgun "out in a covered down position." Id.[1]

Officer Robert Dyer arrived at the scene in a marked police cruiser. Dyer saw the driver, Elliott, next to the stopped vehicle and conducted a weapons frisk. Dyer informed Elliott that the stop involved a narcotics investigation. After confirming Elliott was not concealing a firearm, Dyer asked Elliott for consent to a more thorough search. At the time, neither Dyer nor any of the other officers had their guns drawn. Id. at 24. Though not "completely sure," Dyer recalled being in the second police vehicle to arrive on the scene. Id. at 23. Dyer did not recall how many police vehicles were on the scene as "the stop was being conducted." Id.

Dyer testified that when asked for consent to search, Elliott responded "yes" while "nodding his head up and down in an affirmative motion." Id. at 21. Dyer then reached into Elliott's pocket and retrieved a clear plastic bag containing thirteen heroin capsules. Elliott was arrested and later indicted for possession of heroin, a violation of Code § 18.2-250.

---

[1] None of the witnesses defined the phrase "covered down position." App. at 18. In the trial court, Elliott's counsel interpreted it to mean the officer merely had "his hand on his hip at his gun." Id. at 28. At oral argument on appeal, however, Elliott's counsel claimed the officer "brandished" his firearm. Oral Argument Audio 04:08 to 04:11 (Sept. 20, 2012). The record does not support this new factual assertion.

Prior to trial, Elliott moved to suppress the heroin evidence. He did not challenge the legality of the stop or the weapons frisk. Instead, he elected to take the witness stand and testified about his encounter with Officer Dyer. Elliott confirmed Dyer asked for consent to search. But "I told him no," Elliott testified. Id. at 50. Elliott further denied nodding his head in the affirmative.

Elliott never testified that he felt he could *not* say no or that he involuntarily said yes to the officer's search. Nor did he testify that he was aware of how many officers were on the scene or whether any of them were armed. He said nothing about any of the officers shouting at him, threatening him, or cajoling him into consenting. Likewise, Elliott did not mention Dyer's explanation for the purpose of the stop or suggest that the explanation intimidated him into agreeing to the search. From start to finish, his testimony was simply that he expressly refused to consent to the requested search. The trial court denied the motion to suppress and convicted Elliott as charged.[2]

II.

On appeal, Elliott argues the trial court erred as a matter of law in not finding that the police coerced him into consenting to the search. We find no basis, either in legal precedent or in common sense, for reversing Elliott's conviction on this ground.

---

[2] Without objection, the trial court collapsed the suppression hearing and the trial on the merits into a single evidentiary proceeding. During Elliott's testimony, he admitted he was a heroin user and had, in fact, possessed heroin that day. App. at 50-51. Given our ruling, we need not address whether his testimony renders harmless the allegedly unconstitutional admission of evidence. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 66, 628 S.E.2d 74, 78-79 (2006) (*en banc*) (finding that defendant's confession rendered "harmless" any "constitutional error" in admitting cumulative incriminating evidence). A "confession is like no other evidence" and is "probably the most probative and damaging evidence that can be admitted against him." Arizona v. Fulminante, 499 U.S. 279, 296 (1991).

Our reasoning begins with the general rule that "a search authorized by consent is wholly valid." Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (*en banc*) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)); Ellis v. Commonwealth, 52 Va. App. 220, 226, 662 S.E.2d 640, 643 (2008). "Police officers act in full accord with the law when they ask citizens for consent. It reinforces the rule of law for the citizen to advise the police of his or her wishes and for the police to act in reliance on that understanding." Barkley v. Commonwealth, 39 Va. App. 682, 696, 576 S.E.2d 234, 241 (2003) (quoting United States v. Drayton, 536 U.S. 194, 206-07 (2002)). Consequently, courts have "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Florida v. Jimeno, 500 U.S. 248, 250-51 (1991).

To be effective, of course, consent must be voluntarily given. That said, the presence or absence of "official coercion cannot be resolved by any infallible touchstone." Schneckloth, 412 U.S. at 229. Instead, the "question of the voluntariness of a consent is one of fact to be determined by the trial court." Stamper v. Commonwealth, 220 Va. 260, 268, 257 S.E.2d 808, 814 (1979); see also Ohio v. Robinette, 519 U.S. 33, 40 (1996); Gray v. Commonwealth, 233 Va. 313, 327, 356 S.E.2d 157, 164 (1987). Using the "traditional definition of 'voluntariness,'" Schneckloth, 412 U.S. at 229, the trial court's determination of voluntariness must take into account the unique facts and circumstances of each case.

The most unique fact in this case is Elliott's sworn testimony *denying* he consented to the search. Instead, he felt perfectly free to *refuse* consent and, in fact, claimed he expressly did so. It is certainly true that citizens should not be "coerced to comply with a request that they would prefer to refuse." Florida v. Bostick, 501 U.S. 429, 438 (1991). But it is equally true that a trial court sensibly can conclude that citizens, like Elliott, were not coerced into compliance after testifying under oath that they refused to comply.

- 4 -

In essence, Elliott asks us to hold the trial court erred (as a matter of law) by not finding (as a matter of fact) that he *involuntarily consented* to the search, even though he swore under oath that he *voluntarily refused* to consent to the search. In other words — lest we appear to be splitting hairs — for Elliott to prevail on appeal he must first prove that he perjured himself in the trial court. Such a self-defeating argument ordinarily brings appellate review to a standstill. A criminal defendant, no less than any other litigant, "is bound by [his] testimony on appeal." Waters v. Commonwealth, 39 Va. App. 72, 79, 569 S.E.2d 763, 766 (2002) (citing Delawder v. Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973)).[3] We need not rest our holding solely on this ground, however, because the other circumstances of this case confirm the trial court's finding that Elliott was not coerced into consenting to the search.

On appeal, Elliott lays heavy emphasis on the fact that the officers physically detained him and stated they stopped the vehicle pursuant to a narcotics investigation. Elliott concedes the officers did not expressly identify him as a suspect, but claims the coercive effect was the same as if they had done so. We disagree with the premise underlying this assertion and hold these facts, taken at face value, do not raise even a *prima facie* showing of coercion.

Consent searches "are part of the standard investigatory techniques of law enforcement agencies." Schneckloth, 412 U.S. at 231-32. They can "develop quickly or be a logical extension of investigative police questioning." Id. at 232. The fact that the request occurs during a criminal investigation does not, by itself, vitiate the consent — for that is the very context in which such requests would naturally arise. "If consent is freely given, it makes no

---

[3] Accord Am. Commc'ns Network, Inc. v. Williams, 264 Va. 336, 342, 568 S.E.2d 683, 687 (2002) (holding a litigant's sworn "statements of fact and the necessary inferences therefrom are binding upon him" (citation omitted)); Beeton v. Beeton, 263 Va. 329, 336-37, 559 S.E.2d 663, 667 (2002) (recognizing "a litigant should not be permitted to ask a court to make findings that contradict the litigant's own sworn statements regarding such facts").

difference that an officer may have approached the person with the hope or expectation of obtaining consent." Kentucky v. King, 131 S. Ct. 1849, 1858 (2011).

It could not be otherwise. If merely accusing a suspect of a crime rendered a later consent to search involuntary, then innocent suspects would be precluded from consenting to a search that might immediately exonerate them. A suspect wrongfully accused of a crime could plead with police officers to conduct a search only to be told the Fourth Amendment forbids them from accepting the offer. Such a result would be wholly inconsistent with society's "real interest in encouraging consent" not only to convict the guilty but also to "ensure that a wholly innocent person is not wrongly charged with a criminal offense." Jimeno, 500 U.S. at 252 (quoting Schneckloth, 412 U.S. at 243).

To be sure, an officer may lawfully *arrest* a suspect and thereafter request consent from the arrestee (whether needed or not)[4] to search for incriminating evidence. Neither the arrest itself nor the obvious fact that the arrestee is the target of the requested search undermines the voluntariness of the arrestee's consent. Schneckloth, 412 U.S. at 233 (summarizing Davis v. United States, 328 U.S. 582 (1946)). Absent "force," "threat of force," or some other uniquely coercive circumstance, the Fourth Amendment does not invalidate the consent. See id. Under settled law, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." United States v. Watson, 423 U.S. 411, 424 (1976); see also Gray, 233 Va. at 327, 356 S.E.2d at 164; accord United States v. Boone, 245 F.3d 352, 363 (4th Cir. 2001).[5]

---

[4] An arresting officer needs no consent for searches incident to arrest, Virginia v. Moore, 553 U.S. 164, 178 (2008), rev'g, 272 Va. 717, 636 S.E.2d 395 (2006), or for certain automobile searches, Powell v. Commonwealth, 57 Va. App. 329, 338-40, 701 S.E.2d 831, 835 (2010).

[5] Elliott relies on McGee v. Commonwealth, 25 Va. App. 193, 487 S.E.2d 259 (1997) (*en banc*), for the proposition that being told "there [was] a criminal investigation" contributed to his

Nor do officers have a constitutional duty to inform a suspect of his "right to refuse when seeking permission to conduct a warrantless consent search." Drayton, 536 U.S. at 206; Robinette, 519 U.S. at 39-40; Schneckloth, 412 U.S. at 227. The prosecution need not "establish such knowledge as the *sine qua non* of an effective consent." Robinette, 519 U.S. at 39-40 (quoting Schneckloth, 412 U.S. at 227). Consent can be invalidated only upon a showing that one's "will ha[d] been overborne and his capacity for self-determination critically impaired." Watson, 423 U.S. at 424 (quoting Schneckloth, 412 U.S. at 225).

Given these principles, we hold the facts amply support the trial court's finding that Elliott was not coerced into consenting to the officer's request to search. By testifying that he *voluntarily* refused consent, Elliott undermined his counsel's argument that he *involuntarily* consented. Equally damaging is what Elliott did not say. He never testified he heard any threats, saw any brandished firearms, observed an overwhelming number of officers, experienced any overt or implicit coercion, or felt he had no choice but to consent. Nor can any coercion be inferred as a matter of law from Elliott's temporary detention or his knowledge of the ongoing criminal investigation. For these reasons, the trial court did not err in denying Elliott's pretrial motion to suppress.

III.

Finding no error in the trial court's denial of Elliott's motion to suppress, we affirm.

Affirmed.

---

inability to refuse the search request, see Appellant's Br. at 4-5. McGee, however, addressed this issue as one of many factors in determining whether a Fourth Amendment *seizure* had taken place, not whether a lawfully seized person could provide voluntary consent to search. See Barkley, 39 Va. App. at 692, 576 S.E.2d at 242 (clarifying further that, even under McGee, merely informing a suspect that officers are "conducting a general investigation in response to a report of drug dealing" does not implicate a seizure).