COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Chafin and Decker
Argued at Norfolk, Virginia


GEORGE LEE HAWKINS

                                                         OPINION BY
v.        Record No. 1270-14-1              JUDGE TERESA M. CHAFIN
                                                     AUGUST 4, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

Griffin M. O'Hanlon (Korslund & Korslund, P.C., on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


George Lee Hawkins was convicted of possession of a firearm by a convicted felon in

violation of Code § 18.2-308.2.  On appeal, he contends that the trial court erred by denying his

motion to suppress the firearm found on his person.  Hawkins argues that the trial court

erroneously concluded that he consented to the search in question and that the police officer who

performed the search "exceeded the scope of a Terry[1] stop [by conducting] a search of the

defendant's person rather than a protective frisk."  For the reasons that follow, we affirm

Hawkins's conviction.

I.  BACKGROUND

"When reviewing a denial of a suppression motion, we review the evidence 'in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'"

Elliott v. Commonwealth, 61 Va. App. 48, 51, 733 S.E.2d 146, 148 (2012) (quoting Glenn v.

_____
[1] Terry v. Ohio, 392 U.S. 1 (1968).

Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008)).  So viewed, the evidence established that Chesapeake Police Officer Barret C. Ring observed a suspected hand-to-hand drug transaction in an area known as a high crime, open-air drug market shortly after midnight on February 28, 2013.[2]  Ring saw Hawkins and another man standing in the street facing a third individual who was later identified as "Hamilton."  Hawkins's companion completed a hand-to-hand exchange with Hamilton while Hawkins stood nearby.  Hamilton then got in the passenger seat of a car waiting across the street, and the car left the area.

Officer Ring stopped the car for a traffic violation at an intersection located within a block of where the exchange occurred.[3]  When Ring stopped the car, its driver dropped drug paraphernalia and Ring found "multiple quantities of suspected cocaine" when he searched Hamilton following his arrest.  Norfolk police officers arrived at the scene shortly after Officer Ring stopped the car.  Officer Ring informed the officers of the hand-to-hand exchange and directed their attention to Hawkins and his companion, who were standing across the street.

Five Norfolk police officers arrived at the scene and approached Hawkins and the other man.  The officers asked the men for their identification, and asked them questions about what they were doing on the street that night.  The officers did not, however, mention the traffic stop or the narcotics investigation that was being conducted across the street by the Chesapeake police.  One of the officers described the tone of the conversation as "completely casual," and he testified that the officers only intended to identify the men for later investigation.  Although there

---

[2] Although the transaction occurred within the City of Norfolk, it occurred near that city's limits, "well within three hundred yards" of the City of Chesapeake.

[3] This stop occurred within the City of Chesapeake.

- 2 -

were five officers present, they were not positioned so as to block either Hawkins or his companion from leaving the area.

During the conversation between the officers and the two men, Officer R.A. Mazzio saw a bulge under Hawkins's shirt. He asked Hawkins if he had "a big cell phone on [his] belt," and then asked him if he "could do him a favor" by raising his "shirt up a little bit so [Mazzio could] see how it sits." Mazzio testified that his tone was congenial and even joking during this interaction and that he did not instruct or command Hawkins to raise his shirt.

In response to Mazzio's request, Hawkins extended his arms completely out to his sides and raised them about halfway up to his shoulders with his palms facing the officers. Hawkins did not say anything or make any other movements for approximately five seconds. After several seconds, an officer lifted the tail of Hawkins's shirt and revealed the handle of a handgun tucked into his waistband. The officers confiscated the firearm, and Hawkins was arrested for possessing a firearm as a convicted felon. Officer S.A. Bartley took a statement from Hawkins following his arrest. Bartley testified that Hawkins told him that he did not initially tell the officers that he had a weapon because he did not want to startle them, but that he "came around and showed the officers that he . . . was indeed wearing a firearm."

Hawkins moved to suppress the evidence obtained by the officers on February 28, 2013, arguing that he did not consent to a search (specifically, the lifting of his shirt by the officers) and that the officers' actions exceeded the scope of a search permissible under Terry. The trial court denied his motion. The trial court concluded that Hawkins consented to the search through his actions on the night in question. Additionally, the trial court noted that reasonable suspicion would have supported a Terry frisk for weapons under the circumstances and elaborated on the specific facts of the case that would have given rise to that reasonable suspicion. The trial court, however, expressly held that a Terry stop had not occurred in the present case. The trial court

- 3 -

concluded that the interaction between Hawkins and the officers was consensual and that Hawkins consented to the lifting of his shirt during that interaction. Hawkins entered a conditional guilty plea after the trial court denied his motion to suppress, and this appeal followed.

## II. ANALYSIS

In reviewing a trial court's denial of a motion to suppress, "we determine whether the accused has met his [or her] burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." Roberts v. Commonwealth, 55 Va. App. 146, 150, 684 S.E.2d 824, 826 (2009). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (*en banc*) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261).

On appeal, Hawkins's argument focuses primarily on the scope of the search in question. Hawkins contends that the police officer conducting the search exceeded the scope of Terry by lifting his shirt before he performed a weapons frisk. The trial court, however, held that Hawkins consented to the search. While the trial court explained that the officers *could have* performed a weapons frisk under Terry, it expressly held that a Terry stop and weapons frisk did not occur. Accordingly, we analyze whether the trial court erred by concluding Hawkins consented to the search without addressing whether or not the officer's actions exceeded the scope of a weapons frisk permissible under Terry.

- 4 -

"As a general rule, 'a search authorized by consent is wholly valid.'" Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (*en banc*) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). "Where consent is freely and voluntarily given, probable cause and a search warrant are not required." Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989). "The presence of consent is a factual question to be determined by the trier of fact" based on the totality of the circumstances, and we reverse a trial court's decision regarding the presence of consent only when it is plainly wrong. Jean-Laurent v. Commonwealth, 34 Va. App. 74, 79, 538 S.E.2d 316, 318 (2000).

"'Consent to a search . . . must be unequivocal, specific and intelligently given . . . and it is not lightly to be inferred.'" Id. at 78, 538 S.E.2d at 318 (quoting Elliotte v. Commonwealth, 7 Va. App. 234, 239, 372 S.E.2d 416, 419 (1988)). Consent, however, may be evidenced by conduct alone. "Courts have found consent to a specific request to search a person when evidenced by conduct alone, such as turning and 'placing one's hands against the wall without prompting,' or shrugging one's shoulders and then extending one's arms." Id. at 79, 538 S.E.2d at 318 (emphasis omitted) (quoting Bynum v. Commonwealth, 23 Va. App. 412, 417, 477 S.E.2d 750, 753 (1996)). Nevertheless, an appellant's mere acquiescence to a search is inadequate to establish that he or she voluntarily consented to it, and the Commonwealth bears a heavier burden "'where the alleged consent is based on an implication.'" Id. at 78-79, 538 S.E.2d at 318 (quoting Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986)).

When we review the evidence of the present case under our established standard of review, we conclude that the trial court did not err by denying Hawkins's motion to suppress. The trial court's conclusion that Hawkins consented to the search was supported by the evidence of the case and was not plainly wrong.

On appeal, Hawkins concedes that his initial interaction with the police was consensual.[4] The Norfolk officers approached Hawkins and his companion to identify them for further investigation, and they did not place them under arrest or otherwise detain them against their will. The officers testified that their tone during this interaction was "completely casual" and even joking. Although five officers were present, they were not positioned in a way that blocked Hawkins from leaving the area and they did not mention the narcotics investigation being conducted by the Chesapeake police across the street. Although the trial court noted that the officers could have conducted a Terry stop under the circumstances, the officers chose to have a less invasive, consensual encounter with Hawkins and his companion.

During the course of this encounter, Officer Mazzio noticed a bulge under Hawkins's shirt. Rather than pat Hawkins down, Mazzio asked Hawkins if he "could do him a favor" and lift his shirt. Importantly, Mazzio *asked* Hawkins if he would lift his shirt; he did not *order* him to do so. In response to this request, Hawkins raised his arms about halfway up to his shoulders with his palms facing the officers and held them in that position for several seconds. When an officer eventually lifted Hawkins's shirt, Hawkins did not tell him to stop or otherwise resist the search.

We conclude that Hawkins's non-verbal response to Mazzio's request invited the officers to lift his shirt.[5] Like an appellant who places his or her hands on a wall in response to an

---

[4] Although we are generally precluded from accepting concessions of law made on appeal, see Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008), we agree with Hawkins's concession based on our independent review of the record.

[5] The Fourth Circuit reached a similar conclusion based on comparable conduct in United States v. Wilson, 895 F.2d 168 (4th Cir. 1990). Likewise, this Court has reached similar conclusions in two unpublished opinions, Graham v. Commonwealth, No. 0281-04-3, 2005 Va. App. LEXIS 287 (Va. Ct. App. July 18, 2005), and Baker v. Commonwealth, No. 1311-03-2, 2004 Va. App. LEXIS 222 (Va. Ct. App. May 11, 2004). While these unpublished decisions have no precedential value, we cite them here as informative decisions pursuant to Rule 5A:1(f).

officer's request to perform a search, Hawkins assumed a common "frisk stance" that implied that he consented to the search. The officers reasonably inferred that Hawkins agreed to allow them to lift his shirt, and he did nothing to indicate that he objected to their actions. See Florida v. Jimeno, 500 U.S. 248, 250-51 (1991) ("The touchstone of the Fourth Amendment is reasonableness . . . [and t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

The trial court's conclusion that Hawkins consented to the search, however, was based on more than his mere physical conduct. After his arrest, Hawkins told the police that he eventually "came around and showed the officers that he . . . was indeed wearing a firearm." This statement implied that Hawkins made a conscious decision to show the police the weapon, and therefore, implied that he actually consented to the search.

In the present case, the evidence established that Hawkins voluntarily consented to Mazzio's request to lift his shirt. During a consensual encounter, Mazzio asked Hawkins if he would lift his shirt and Hawkins responded to this request by assuming a position commonly associated with weapons frisks that implied his consent. Furthermore, the statements Hawkins made to the police officers following his arrest implied that he consented to the search. Accordingly, we conclude that the trial court did not err by determining that Hawkins consented

to the search and denying his motion to suppress on that basis.[6]  Therefore, we affirm Hawkins's

conviction.

Affirmed.

---

[6] As we conclude that the trial court did not err by deciding that Hawkins consented to the search, applying the "right result, wrong reason" principle to reach the substance of Hawkins's argument concerning the scope of the Terry frisk is inappropriate.  The trial court's decision based on consent was correct, and accordingly, there is no "wrong reason" underlying it that would require us to examine alternate grounds that may support the decision.

Petty, J., concurring.

I concur in the judgment of the Court. However, given the findings of fact made by the trial court, the legal concessions made by Hawkins, the specific wording of the assignment of error,[7] and the legal principles involved, I find it unnecessary to reach the question of whether Hawkins consented to the search. I agree with the trial court that Hawkins was detained based on a reasonable suspicion of criminal activity and that the officers had a reasonable suspicion that he might be armed. Therefore, I would hold that the officers were justified in lifting his shirt to confirm or dispel their suspicions and, thus, the search was reasonable irrespective of whether Hawkins consented to the search.

Here, the trial court analyzed the stop as a consensual encounter. The court found that "while [the officers] could have conducted a Terry stop and had a more invasive interaction with the defendant, they chose to engage him in conversation." The court further found that when Officer Mazzio "walk[ed] up and he [saw] the bulge . . . he could have patted [Hawkins] down to find out what that was, given everything that had gone on, but that wasn't his approach." During the encounter, Hawkins "decid[ed] to let them see what this bulge was, as he himself later admitted that's what he decided to do and what he did do." Thus the court found as fact that although "the officers would have reasonable articulable suspicion based on the observations of the Chesapeake police officer to have conducted a Terry stop," they chose to handle the encounter as a consensual one.

---

[7] The assignment of error reads:

> The trial court erred in denying the motion to suppress evidence seized as the result of a police officer searching the defendant's person because the police officer exceeded the scope of a Terry stop in that he conducted a search of the defendant's person rather than a protective frisk.

- 9 -

On brief and at oral argument, Hawkins concedes that there was sufficient articulable suspicion to support a detention pursuant to Terry and that the officers had a reasonable suspicion that Hawkins might be armed. Moreover, he concedes that a police officer would have been justified in frisking him, and in lifting his shirt after the frisk if the officer had felt the handle of his handgun.[8] Hawkins argues, however, that because the officer lifted his shirt and exposed the handgun before frisking him, the search "exceeded the scope of a Terry stop in that [the officer] conducted a search of the defendant's person rather than a protective frisk." Hawkins contends that a frisk is a "limited protective search [that] is an intermediate police investigatory tool between mere questioning and a full, custodial search." Appellant's Br. at 8. Hawkins argues that "Officer Aaron ignored the authorized intermediate tool of a protective frisk, which he may have been justified in utilizing, and instead conducted a search of [Hawkins's] person," thereby exceeding the scope of a Terry stop. Id. Hawkins thereby implicitly asks us to hold first that there was a Terry stop, and then to conclude that because the officer did not pat Hawkins down before lifting his shirt, the search was impermissible. I agree with Hawkins that the officers were justified in detaining him; however, I disagree that the search exceeded the scope authorized by Terry.

THE EVIDENCE SUPPORTS A LAWFUL INVESTIGATORY STOP AND PROTECTIVE SEARCH

A police officer may detain a person "if the officer possesses a reasonable suspicion, based on articulable facts, that the individual is or is about to be engaged in criminal activity." Gregory v. Commonwealth, 22 Va. App. 100, 105, 468 S.E.2d 117, 120 (1996). "'There are no

---

[8] As the majority notes, "'[o]ur fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal.'" Copeland v. Commonwealth, 52 Va. App. 529, 531-32, 664 S.E.2d 528, 529 (2008) (quoting Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (en banc)). However, in this case the findings of the trial court as well as my independent review of the record support my conclusion that Hawkins's concessions are well taken.

bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider the totality of the circumstances—the whole picture.'" Reel v. Commonwealth, 31 Va. App. 262, 266, 522 S.E.2d 881, 883 (2000) (quoting Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994)). "Further, the Fourth Amendment requires only that an objectively reasonable basis exist for a search." Logan v. Commonwealth, 29 Va. App. 353, 359, 512 S.E.2d 160, 163 (1999). "'That the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as [all] the circumstances, viewed objectively, justify that action.'" Id. (quoting Whren v. United States, 517 U.S. 806, 812-13 (1996)) (alteration in original).

Here, the trial court analyzed the permissibility of the search in the context of consent because the officers chose to handle the encounter as a consensual one. However, an officer's choice to frame an encounter as a consensual one does not invalidate an investigatory detention as long as all the circumstances, viewed objectively, justify that action. See id. There is no dispute here, based on Hawkins's concession and the trial court's explicit findings, that there was reasonable and articulable suspicion to justify a detention. The court specifically found that the Chesapeake officer's identification of Hawkins as a participant in the drug deal provided articulable suspicion that Hawkins was involved in a crime. The Chesapeake officer saw Hawkins standing six inches away from an individual who was involved in a drug deal with the passenger of a BMW. The Chesapeake officer alertly noticed that Hawkins and another individual had moved from the location of the drug transaction to the street corner across the street from where the Chesapeake officer was arresting the other party to the transaction. After stopping the BMW and finding drugs during a search incident to arrest, the Chesapeake officer pointed Hawkins out as a suspect to the Norfolk officers. It was based on these facts, explicitly

enumerated by the trial court, that the court found sufficient evidence to support a Terry stop. I agree with the trial court that the officers had reasonable suspicion to detain and question Hawkins.

Similarly, the officers' choice to treat the search as one conducted with consent does not invalidate the lawfulness of a protective search pursuant to Terry as long as all the circumstances, viewed objectively, justify that action. "During an investigative stop authorized under Terry, an officer may conduct a limited *search* for concealed weapons if the officer reasonably believes that a criminal suspect may be armed and dangerous." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 839 (2002) (emphasis added). "The purpose of this 'pat down' search is not to uncover evidence of criminal activity, but to permit the officer to conduct his investigation without encountering a violent response." Id. at 573-74, 570 S.E.2d at 839.

> The circumstances that a court can consider when determining whether an officer had reasonable, articulable suspicion to believe an individual was armed "include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime."

Roberts v. Commonwealth, 55 Va. App. 146, 153, 684 S.E.2d 824, 827 (2009) (quoting McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008)). However, even in a "high crime, high drug area," a protective search requires that an officer have articulable suspicion to believe an individual is armed. Id. at 155, 684 S.E.2d at 828.

The justification for a search in these circumstances "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer." Terry v. Ohio, 392 U.S. 1, 29 (1968). In order to take this protective step, an officer

- 12 -

need not be certain that the individual is armed. Rather "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27.

Here, as Officer Mazzio approached Hawkins, he performed what amounted to a "visual patdown" when he "visually looked down, up and down [Hawkins's body]." As a result of this, Officer Mazzio noticed the bulge which "could have been a weapon" and which, based on his experience, caused him concern for his safety and the safety of those around him.

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Id. at 24.[9] Notably, Terry authorizes "necessary measures" to determine whether the person is armed, rather than authorizing a pat down only.

The Norfolk officers were in a "high crime, high drug area" known for "firearm-related offenses and calls violent in nature." It was the middle of the night. The officers were aware that a Chesapeake officer was in the process of making a drug arrest and that he had implicated Hawkins in the drug transaction. See Bandy v. Commonwealth, 52 Va. App. 510, 518, 664 S.E.2d 519, 523 (2008) ("Courts have often recognized that 'the connection between illegal drug operations and guns is a tight one.'" (quoting Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006))). One of the officers visually observed a bulge at Hawkins's

---

[9] As one officer testified when explaining his motivation in raising a suspect's shirt during a Terry stop, "Sir, I like to go home with the same amount of holes that I leave the house [with]; and if that individual has a weapon and they might do harm to me, I would like to know it beforehand." United States v. Motley, No. 2:13-cr-20373-SHL, 2014 U.S. Dist. LEXIS 81964, at *7 (W.D. Tenn. June 17, 2014).

waist that he suspected could be a weapon and that caused him concern for his safety.[10] "[A] reasonably prudent man in [these] circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27.

### A PRELIMINARY PAT DOWN WAS NOT REQUIRED IN THESE CIRCUMSTANCES

Hawkins's argument is premised on the belief that the only search authorized by Terry is a tactile pat down of the defendant's outer clothing. While that may be true in cases where there is no readily apparent indication that a suspect possesses a weapon, I do not believe a police officer is required to touch the object his eyes have already detected in order to confirm or dispel his suspicion the suspect is armed. In approving the limited pat-down search in Terry, the United States Supreme Court recognized that the limitations which the Fourth Amendment places upon a protective search for weapons "will have to be developed in the concrete factual circumstance of individual cases." Id. at 29. Several federal circuit courts of appeal have developed the limits of protective searches where a visible bulge is present before any pat down is performed.

In United States v. Baker, 78 F.3d 135, 136 (4th Cir. 1996), an officer made a traffic stop at about 1:20 a.m. The officer saw a bulge underneath the front of the suspect's shirt that could have been a weapon. Id. "In order to determine whether [the suspect] was carrying a concealed weapon, [the officer] ordered [the suspect] to lift his shirt above the bulge." Id. When the suspect complied, a handgun was revealed. Id. The trial court granted the motion to suppress the handgun, reasoning that the officer "had no justification to reasonably believe the suspect

---

[10] The fact that the officer told Hawkins that he thought the bulge might be a cell phone is not relevant to the analysis. See Mason v. Commonwealth, 64 Va. App. 292, 302, 767 S.E.2d 726, 732 (2015) (en banc) ("Because courts 'do not examine the subjective understanding of the particular officer involved,' Heien v. North Carolina, 135 S. Ct. 530, 539 (2014), it necessarily follows that, when deciding a suppression motion, a court should not limit itself 'to what the stopping officer says or to evidence of his subjective rationale,' Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (en banc).").

was armed and dangerous and that even if the officer reasonably could have formed such a belief, he should have conducted a 'patdown frisk' instead of directing [the suspect] to raise his shirt." Id. at 137.

The Fourth Circuit reversed the trial court's conclusions on both issues. The Fourth Circuit reasoned that "a bulge that could be made by a weapon in a suspect's clothing reasonably warrants a belief that the suspect is potentially dangerous, even if the suspect was stopped only for a minor violation." Id.; see also Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977) (per curiam) (holding that a bulge in the jacket of appellant was sufficient to conclude appellant might be armed and pose a serious danger). Further, the Fourth Circuit held that "the [trial] court erroneously concluded that a patdown frisk was the only permissible method of conducting a Terry search." Baker, 78 F.3d at 138. Rather, "the reasonableness of a protective search depends on the factual circumstances of each case." Id. (citing Terry, 392 U.S. at 29). The Fourth Circuit noted that the raising of the shirt "was less intrusive than the patdown frisk sanctioned in Terry," and was therefore within the permissible scope of a Terry stop. Id.

Similarly, the Ninth Circuit Court of Appeals found that the lifting of a shirt was a permissible search within the scope of a Terry stop. United States v. Hill, 545 F.2d 1191, 1193 (9th Cir. 1976). In Hill, an officer stopped an individual who was passing by the scene of a recent armed robbery and asked him if he had seen anyone running by. Id. at 1192. The officer did not suspect the individual of being the robber. Id. During the conversation, the officer "noticed a large bulge at [the individual's] waistband which he suspected of being caused by a weapon." Id. "The officer raised [the individual's] shirt which was hanging outside his trousers, thus exposing his waistband and revealing" money stolen during the robbery. Id. at 1192-93.

The Ninth Circuit upheld the search as reasonable, finding "that the lifting by the officer of [the individual's] shirt was not, under the circumstances, overly intrusive." Id. at 1193. The

- 15 -

court reasoned that "the officer's investigation was wholly confined to the area of the bulge in question and was a direct and specific inquiry. As such it did not transcend the permissible bounds established by Terry." Id. The court concluded, "Terry does not in terms limit a weapons search to a so-called 'pat down' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault [is] permissible. The raising of the shirt in the instant case is well within the boundaries established by Terry." Id.; see also United States v. Reyes, 349 F.3d 219, 225 (5th Cir. 2003) (holding that a request that suspect lift his shirt is less obtrusive than a pat-down search and therefore permissible under Terry).

In summary, "a patdown frisk is but one example of how a reasonable protective search may be conducted." Baker, 78 F.3d at 138; see United States v. Casado, 303 F.3d 440, 449 n.5 (2d Cir. 2002) ("[W]e agree with the general principle that a patdown is not the only type of search authorized by Terry, and that there are circumstances in which a patdown is not required."); Hill, 545 F.2d at 1193 ("Terry does not in terms limit a weapons search to a so-called 'patdown' search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault [is] permissible."). The search, however conducted, must be confined strictly to what is minimally necessary to learn whether an individual is armed and to disarm him once a weapon is discovered. Terry, 392 U.S. at 30; see also Adams v. Williams, 407 U.S. 143, 148 (1972) (holding that it was reasonable within the scope of Terry for an officer relying on a tip to reach into a car and remove a handgun from suspect's waistband even though the gun was not visible to the officer). Simply put, the reasonableness requirement found in the Fourth Amendment does not require a police officer to take the unnecessary, and potentially dangerous, step of performing a pat down to confirm what he has already discovered visually — that a suspect may very well be armed and dangerous.

Here, as in <u>Terry</u>, the officer "confined his search strictly to what was minimally necessary to learn whether [Hawkins was] armed and to disarm [him] once he discovered the weapon[]." <u>Terry</u>, 392 U.S. at 30. Here, as in <u>Baker</u>, the raising of the shirt "was less intrusive than [a] patdown frisk." 78 F.3d at 138. Here, as in <u>Hill</u>, "the officer's investigation was wholly confined to the area of the bulge in question and was a direct and specific inquiry [and a]s such it did not transcend the permissible bounds established by <u>Terry</u>." <u>Hill</u>, 545 F.2d at 1193.

Therefore, I would hold that when a visual observation of an individual indicates a bulge in the individual's clothing sufficient to warrant a belief that the bulge may well be caused by a concealed weapon, a lifting of the clothing in the area of the bulge without a prior tactile pat down is within the permissible scope of a <u>Terry</u> search.

RIGHT RESULT, DIFFERENT REASON

"'[A]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason.'"[11] <u>Debroux v. Commonwealth</u>, 32 Va. App. 364, 371-72, 528

---

[11] While Virginia courts often style this principle as "right result, wrong reason," the ignored reason need not necessarily be wrong. An appellate court's authority to affirm a trial court's judgment on grounds other than those relied upon by the trial court is widely accepted. <u>See e.g.</u>, <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 711 (1996) ("affirm[ing] on grounds different from those provided by the Ninth Circuit"); <u>Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty</u>, 673 F.3d 333, 337 n.2 (4th Cir. 2012) ("[W]e may affirm a [trial] court's decision on different grounds than those employed by the [trial] court[.]"); <u>Jordan v. Travelers Ins. Co.</u>, 245 So. 2d 151, 153 n.2 (La. 1971) ("[T]he appellate court may affirm on grounds different than those argued before or relied upon by the lower court."); <u>Schmehl v. Helton</u>, 662 S.E.2d 697, 705 n.7 (W. Va. 2008) ("[T]his Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not.").

The principle is sometimes referred to as the more colorful "tipsy coachman" doctrine. <u>See, e.g.</u>, <u>Robertson v. State</u>, 829 So. 2d 901, 906 (Fla. 2002) (analyzing "[t]his long-standing principle of appellate law, sometimes referred to as the 'tipsy coachman' doctrine"). Georgia Supreme Court Justice Bleckley quoted Oliver Goldsmith's 1774 poem, <u>Retaliation</u>, to illustrate the concept.

> "It may be that we would draw very different inferences [from those drawn by the trial court], and these differences might go to uphold the judgment; for many steps in the reasoning of the court

S.E.2d 151, 155 (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992)), aff'd en banc, 34 Va. App. 72, 537 S.E.2d 630 (2000).  This doctrine does not apply "where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court's decision."  Driscoll, 14 Va. App. at 452, 417 S.E.2d at 313-14.

Here, the trial court addressed the permissibility of a Terry stop and a protective search. The court expressly found that the officers had articulable suspicion to detain Hawkins and that the officer "could have patted [Hawkins] down to find out what [the bulge] was."  The trial court enumerated specific facts from the testimony at trial to sufficiently support a lawful detention and search.  No further factual resolution is needed in this case to affirm the trial court's decision on the alternate ground.  Therefore, consistent with Driscoll, I would affirm on the alternate ground and respond to the specific assignment of error by holding that the lifting of Hawkins's shirt did not exceed the scope of a Terry stop.

Accordingly, for the reasons expressed, I would affirm the conviction.

---

below might be defective, and still its ultimate conclusion be correct.  It not infrequently happens that a judgment is affirmed upon a theory of the case which did not occur to the court that rendered it, or which did occur and was expressly repudiated.  The human mind is so constituted that in many instances *it finds the truth* when wholly unable *to find the way* that leads to it.

'The pupil of impulse, it forc'd him along,
His conduct still right, with his argument wrong;
Still aiming at honor, yet fearing to roam,
The coachman was tipsy, the chariot drove home.'"

Hall v. Va. Empl. Comm'n & Process Mgmt. Techs., Inc., No. 1876-12-3, 2013 Va. App. LEXIS 187, at *8 n.3 (Va. Ct. App. June 18, 2013) (quoting Lee v. Porter, 63 Ga. 345, 346 (1879)).